**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| ADAMS & BOYLE, P.C., on behalf of itself and its patients; WESLEY F. ADAMS, JR., M.D., on behalf of himself and his patients; and MEMPHIS CENTER FOR REPRODUCTIVE HEALTH, on behalf of itself and its patients, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | CASE NO. 3:15-cv-00705 |
| HERBERT H. SLATERY III, Attorney General of Tennessee, in his official capacity; JOHN DREYZEHNER, M.D., Commissioner of the Tennessee Department of Health, in his official capacity; and MICHAEL D. ZANOLLI, M.D., President of the Tennessee Board of Medical Examiners, in his official capacity; GLENN R. FUNK, District Attorney General of Nashville, in his official capacity; AMY WEIRICH, District Attorney General of Shelby County, in her official capacity; and BARRY P. STAUBUS, District Attorney General of Sullivan County, in his official capacity; | ) ) ) ) ) ) ) ) ) ) ) ) ) | JUDGE SHARP MAGISTRATE JUDGE KNOWLES |
| Defendants. | ) ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Adams & Boyle, P.C.; Wesley F. Adams, Jr., M.D., and Memphis Center for Reproductive Health, by and through their undersigned attorneys, bring this complaint against the above-named Defendants, and in support thereof allege the following:

**I.      PRELIMINARY STATEMENT**

1.      In recent years, Tennessee politicians have engaged in a relentless attack on abortion rights, enacting a multitude of restrictions designed to shutter clinics that have provided safe and affordable abortion care for decades and impose unconscionable obstacles on women seeking such care.

2.  This lawsuit challenges three such restrictions:  the "ASTC Requirement," which requires doctor's offices that perform abortions to become licensed as costly ambulatory surgical treatment centers ("ASTCs"), 2015 Tenn. Pub. Acts Chapter 419 (to be codified at Tenn. Code Ann. § 68-11-201) (annexed hereto as Exhibit 1); the "Admitting-Privileges Requirement," which requires doctors who perform abortions to have hospital admitting privileges even though less than one-quarter of one percent of abortion patients ever need treatment at a hospital, 2012 Tenn. Pub. Acts Chapter 1008 (originally codified at Tenn. Code Ann. § 39-15-202(h); to be recodified at Tenn. Code Ann. § 39-15-202(j)) (annexed hereto as Exhibit 2); and the "Delay Requirement," which requires an abortion patient to attend an in-person meeting with a doctor to receive information that could be provided by phone and then delay her abortion for 48 hours after the meeting, 2015 Tenn. Pub. Acts Chapter 473, § 1(a)-(h) (to be codified at Tenn. Code Ann. § 39-15-202(a)-(h)) (annexed hereto as Exhibit 3).

3.  Prior to the enactment of the Admitting-Privileges Requirement in 2012, there were eight clinics in Tennessee that provided surgical abortion services and one that specialized in medication abortions.  The Admitting-Privileges Requirement has already resulted in the closure of two of the clinics that provided surgical abortions.  If the ASTC Requirement takes effect on July 1, the combined effect of the challenged requirements would be to close half of the facilities providing surgical abortions and sharply limit the capacity of those that remain.

4.  The burdens women face as a result of the challenged requirements are compounded by other obstacles to abortion access in Tennessee law.  For example, Tennessee law prohibits many private health insurance plans from providing abortion coverage—including for medically-necessary procedures, *see* Tenn. Code Ann. § 56-26-134, and also limits abortion coverage in public health insurance plans, Tenn Code Ann. § 9-4-5116.  Further, although Tennessee

2

generally promotes telemedicine as a means of improving access to healthcare, *see, e.g.,* Tenn. Code Ann. §56-7-1002(c)-(d) (prohibiting health insurance entities from treating telehealth providers less favorably than traditional providers), it prohibits abortion patients from utilizing telemedicine services, *see* Tenn. Code Ann. § 63-6-241.

5.     Abortion is not available in Tennessee after 16 weeks of pregnancy.  A woman delayed past 16 weeks because of these restrictions will be unable to obtain an abortion in the State.

6.     None of these restrictions provides any health benefit to abortion patients.  Each serves only to make abortion less accessible and less affordable for Tennessee women.

7.     Plaintiffs, who are well-respected Tennessee abortion providers, bring this lawsuit under 42 U.S.C. § 1983 on behalf of themselves and their patients to challenge the ASTC Requirement, the Admitting-Privileges Requirement, and the Delay Requirement.  They seek declaratory and injunctive relief from these unconstitutional laws.

## II.     JURISDICTION AND VENUE

8.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

9.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

10.     Venue is appropriate under 28 U.S.C. § 1391(b)(1) because Defendants reside in this district and § 1391(b)(2) because The Women's Center in Nashville is located here.

## III.     PLAINTIFFS

11.     Plaintiff Adams & Boyle, P.C., is a professional corporation organized under the laws of Tennessee.  It is a holding company for Bristol Regional Women's Center in Bristol, Tennessee (the "Bristol Clinic"), and The Women's Center in Nashville, Tennessee (the

"Nashville Clinic"). The Bristol Clinic has operated continuously since 1980. It provides an array of reproductive health services, including surgical abortions up to 13.5 weeks LMP[1] and medication abortions up to 9 weeks LMP. The Nashville Clinic has operated continuously since 1990. It also provides an array of reproductive health services, including surgical abortions up 16 weeks LMP and medication abortions up to 9 weeks LMP. The Nashville Clinic is a member of the National Abortion Federation ("NAF") and complies with its Clinical Policy Guidelines. The Bristol and Nashville Clinics are not licensed as ASTCs. Adams & Boyle, P.C., sues on its own behalf and on behalf of its patients.

12. Plaintiff Wesley F. Adams, Jr., M.D., is an obstetrician-gynecologist licensed to practice medicine in Tennessee. He has more than three decades of experience providing abortions and currently provides abortions at both the Bristol and Nashville Clinics. Dr. Adams sues on his own behalf and on behalf of his patients.

13. Plaintiff Memphis Center for Reproductive Health is a nonprofit organization that operates CHOICES, a women's health clinic in Memphis, Tennessee (the "Memphis Clinic"). In operation since 1974, the Memphis Clinic provides a wide range of reproductive health care services, including surgical abortions up to 15 weeks LMP and medication abortions up to 9 weeks LMP. The Memphis Clinic is a member of NAF and complies with its Clinical Policy Guidelines. Memphis Center for Reproductive Health sues on its own behalf and on behalf of its patients.

## IV. DEFENDANTS

14. Defendant Herbert H. Slatery III is the Attorney General of Tennessee. He is responsible for defending Tennessee laws against constitutional challenge. *See* Tenn. Code Ann.

---

[1] "LMP" denotes the first day of a pregnant woman's "last menstrual period." It is the standard measure of gestational age used by medical professionals.

§ 8-9-109(b)(9). Further, he has exclusive authority to prosecute criminal violations of the challenged requirements in Tennessee's appellate courts. *See* Tenn. Code Ann. § 8-6-109(b)(2); *State v. Simmons*, 610 S.W.2d 141, 142 (Tenn. Crim. App. 1980). He is sued in his official capacity.

15.     Defendant John Dreyzehner is the Commissioner of the Tennessee Department of Health (the "Department"), which is responsible for licensing and regulating ASTCs. *See* Tenn. Code Ann. § 68-11-202(a)(1). Commissioner Dreyzehner is sued in his official capacity.

16.     Defendant Michael D. Zanolli, M.D., is the President of the Tennessee Board of Medical Examiners. The Board of Medical Examiners is empowered to take disciplinary action against a physician who violates the Delay Requirement, Tenn. Code Ann. § 39-15-202(h), or any "of the laws governing abortion," Tenn. Code Ann. § 63-6-214(b)(6). Dr. Zanolli is sued in his official capacity.

17.     Defendant Glenn R. Funk is the District Attorney General for Nashville. He is responsible for prosecuting all violations of the state criminal statutes occurring in Nashville. Tenn. Code Ann. § 8-7-103. Mr. Funk is sued in his official capacity.

18.     Defendant Amy Weirich is the District Attorney General for Shelby County. She is responsible for prosecuting all violations of the state criminal statutes occurring in Shelby County, which includes Memphis. Tenn. Code Ann. § 8-7-103. Ms. Weirich is sued in her official capacity.

19.     Defendant Barry P. Staubus is the District Attorney General for Sullivan County. He is responsible for prosecuting all violations of the state criminal statutes occurring in Sullivan County, which includes Bristol. Tenn. Code Ann. § 8-7-103. He is sued in his official capacity.

## V.      THE CHALLENGED REQUIREMENTS

ASTC Requirement

20.      In general, Tennessee law classifies facilities where surgical procedures are performed as ASTCs, but excludes private physician's offices from the definition. *See* Tenn. Code Ann. § 68-11-201(3).

21.      In the past, Tennessee tried to require that any private physician's office that performs a "substantial number" of abortions be classified as an ASTC, but this effort was held unconstitutional by the Tennessee Court of Appeals. *See Tenn. Dep't of Health v. Boyle*, No. M2001-01738-COA-R3-CV, 2002 WL 31840685 (Dec. 19, 2002).

22.      The ASTC Requirement set forth in Public Chapter 419, enacted in the most recent legislative session, once again seeks to classify private physician's offices where abortions are performed as ASTCs.  It amends the statutory definition of ASTC to state that:  "'Ambulatory surgical treatment center' means any institution, place, or building devoted primarily to the maintenance and operation of a facility for the performance of surgical procedures or any facility in which a surgical procedure is utilized to terminate a pregnancy. . . . Excluded from this definition are private physicians' office practices where a total of fifty (50) or fewer surgical abortions are performed in any calendar year."  As a result, private physician's offices that perform more than 50 surgical abortions per year are classified as ASTCs.

23.      Under this definition, as under the ASTC definition previously held unconstitutional, "a private physician or dentist may perform any number of surgical procedures, of varying degrees of severity and risk, without being classified as an ASTC, so long as the surgical procedures do not include [the requisite number] of abortions." *Boyle*, 2002 WL 31840685 at *1.

24.     As the Tennessee Court of Appeals has recognized, "[i]n terms of state regulation the consequences of being an ASTC are enormous." *Boyle*, 2002 WL 31840685, *1.  Facilities generally must obtain a certificate of need ("CON") from the Tennessee Health Services and Development Agency as a prerequisite to ASTC licensure.  *See* Tenn. Code Ann. § 68-11-1607(a).  They must then apply for an ASTC license from the Tennessee Department of Health. *See* Tenn. Code Ann. § 68-11-204(a)(1).  Licensure requires compliance with detailed regulations concerning facility construction, staffing, and administration.  *See* Tenn. Comp. R. & Regs. 1200-08-10-.01 to 1200-08-10-.15.

25.     Operating a facility that is required to be licensed as an ASTC without such a license is a crime.  Tenn. Code Ann. § 68-11-213(h)(2).

26.     The ASTC Requirement was signed into law by Governor Bill Haslam on May 8, 2015, and is scheduled to take effect on July 1, 2015.

Delay Requirement

27.     The Delay Requirement set forth in Section 1(a)-(h) of Public Chapter 473, also enacted in the most recent legislative session, has three components:  (1) it requires that an abortion patient receive certain information "orally and in person" prior to her procedure; (2) it requires that the information be provided by "the attending physician who is to perform the abortion" or "the referring physician"; and (3) it delays the patient from having an abortion "until a waiting period of forty-eight (48) hours has elapsed after the attending physician or referring physician has provided the information required [by the statute]," except in a medical emergency.

28.     This requirement is also modeled on an earlier statute that was held unconstitutional.  In 2000, the Tennessee Supreme Court held that a law imposing a mandatory

7

waiting period on abortion patients violated the Due Process Clause of the Fourteenth Amendment by imposing an undue burden on abortion access and also violated the Tennessee Constitution. *See Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 22, 24 (Tenn. 2000). Although the Tennessee Constitution has since been amended, the Due Process Clause of the Fourteenth Amendment remains unchanged.

29. A physician who fails to comply with the Delay Requirement is subject to criminal penalties and loss of licensure. Tenn. Code Ann. § 39-15-202(h).

30. The Delay Requirement was signed into law by Governor Bill Haslam on May 18, 2015, and is scheduled to take effect on July 1, 2015.

Admitting-Privileges Requirement

31. The Admitting-Privileges Requirement was originally set forth in Public Chapter 1008, enacted in 2012, but was deleted and reenacted this year by Public Chapter 473. It has been in effect since July 1, 2012, and is now codified at Tenn. Code Ann. § 39-15-202(j).

32. It prohibits a physician from performing an abortion unless the physician has admitting privileges at a licensed hospital that is located "in the county in which the abortion is performed" or "in a county adjacent to the county in which the abortion is performed."

33. Tennessee law does not require physicians performing outpatient procedures comparable to abortion to have hospital admitting privileges.

34. Tennessee's ASTC regulations provide that: "[e]ach ASTC must have a written transfer agreement with a local hospital"; "[t]he ASTC shall develop a patient referral system both for referrals within the facility and other health care providers"; and "[t]he ASTC shall have available a plan for emergency transportation to a licensed local hospital." Tenn. Comp. R. & Regs. 1200-08-10-.05(6)-(8). Even though the ASTC regulations require extensive procedures to be in place to manage patient emergencies, including transfer of patients to the hospital when

8

needed, physicians who provide abortions at ASTCs must nevertheless also obtain admitting privileges at a local hospital. Physicians who perform any other procedures at ASTCs are not required to obtain such privileges.

## VI.     FACTUAL ALLEGATIONS

Abortion Background

35.     Abortion is a safe and common medical procedure.

36.     Approximately 15% of pregnancies in Tennessee result in induced abortion.

37.     In 2011, the last year for which statistics are currently available, 16,720 women obtained abortions in Tennessee.

38.     Nationwide, roughly one out of every three women will have had an abortion by the time she reaches age 45.

39.     In the U.S, roughly 36% of women obtaining abortions are white; 30% are black; 25% are Hispanic; and 9% come from other racial or ethnic backgrounds.

40.     Seventy-three percent of women having abortions in the U.S. report a religious affiliation. Thirty-seven percent identify as Protestant, and 28% identify as Catholic.

41.     The reasons women give for having an abortion underscore their understanding of the responsibilities of parenthood and family life. Three-fourths of women cite responsibility to other individuals; three-fourths say they cannot afford a child; three-fourths say that having a baby would interfere with work, school or the ability to care for dependents; and half say they do not want to be a single parent or are having problems with their partner.

42.     Most women having abortions already have at least one child; most also report plans to have children (or additional children) when they are older, financially able to provide for them, and/or in a supportive relationship with a partner so their children will have two parents.

43.     Fifty-eight percent of abortion patients in the U.S. say they would have liked to have had their abortion earlier in the pregnancy. Nearly 60% of women who experienced a delay in obtaining an abortion cite the time it took to make arrangements and raise money.

44.     Abortion is one of the safest procedures in contemporary medical practice.  Less than one-quarter of one percent of abortion patients experience a complication that requires hospitalization.

45.     Abortion is far safer than the alternative—carrying a pregnancy to term. Nationwide, the risk of death from carrying a pregnancy to term is approximately 14 times higher than the risk of death from having a legal abortion.  As a result, denying a woman who wants to have an abortion access to legal abortion services does not benefit her health.

46.     Illegal abortions pose a serious risk to women's health.  The World Health Organization has estimated that, even in developed countries, the mortality rate for illegal abortion is 40 times higher than the mortality rate for legal induced abortion.

47.     Self-induced abortions also pose greater risks to women's health than abortions performed by a doctor or other qualified clinician.

<u>Availability of Abortion Services in Tennessee and Impact of the Challenged Requirements</u>

48.     In 2011, there were nine abortion clinics in Tennessee.  Three of these were located in Memphis, including the Memphis Clinic operated by Plaintiff Memphis Center for Reproductive Health; three were located in Knoxville; two were located in Nashville, including the Nashville Clinic operated by Plaintiff Adams & Boyle, P.C.; and one was located in Bristol, the Bristol Clinic operated by Plaintiff Adams & Boyle, P.C.  Together, these clinics provided more than 99% of abortions in Tennessee.

49. Only eight of these clinics offered surgical abortions. One of the clinics in Knoxville offered medication abortions only.

50. The Admitting-Privileges Requirement enacted in 2012 forced two of the clinics offering surgical abortions – one in Memphis and one in Knoxville—to close.

51. It also limited the capacity of the remaining clinics by reducing the number of physicians eligible to provide abortions. As a result of the Admitting-Privileges Requirement, some physicians who had been safely providing abortions in Tennessee for years had to stop doing so, and clinics have had difficulty recruiting new physicians.

52. If the ASTC Requirement is permitted to take effect on July 1, 2015, it would force the Bristol and Nashville Clinics operated by Plaintiff Adams & Boyle, P.C., to close, reducing the number of clinics offering surgical abortions to four.

53. Thus, the combined impact of the ASTC and Admitting-Privileges Requirements would be to close half of the clinics providing surgical abortion services in Tennessee.

54. Women in Bristol would then have to travel over 100 miles to Knoxville to reach the closest Tennessee abortion provider. Those women would face increased transportation and childcare expenses, and have to spend more time away from work. Those trying to keep their abortion confidential—from an abusive partner, for example—would have a harder time doing so.

55. There is currently only a single doctor providing surgical abortions in Knoxville. When that doctor gets sick, goes on vacation, or is otherwise unavailable, women are unable to obtain surgical abortions in Knoxville.

56.     If the ASTC Requirement takes effect, forcing the Bristol and Nashville Clinics to close, women throughout Tennessee would be delayed in accessing abortion services, as they attempt to obtain appointments with a substantially diminished pool of physicians and clinics.

57.     Since the enactment of the Admitting-Privileges Requirement, women in some parts of Tennessee already have to wait two to three weeks to obtain an appointment for abortion services.

58.     In Tennessee, medication abortions are not available after 9 weeks LMP.   A woman delayed past 9 weeks LMP cannot obtain a medication abortion in Tennessee.

59.     In Tennessee, surgical abortions are not available after 16 weeks LMP.   A woman delayed past 16 weeks LMP cannot obtain an abortion in Tennessee at all.

60.     Although abortion is safe throughout pregnancy—and safer than many other common medical procedures—both the risk of complications and the cost of the procedure increase with gestational age.

61.     The Delay Requirement will further limit the capacity of abortion clinics when it takes effect.   Unless a patient is referred to an abortion clinic by a physician who is willing and able to provide the required information at a separate location, it will require abortion clinics to schedule an additional, medically-unnecessary appointment for each patient and require a physician affiliated with the abortion clinic to see the patient during that appointment.   The physician time and clinic space needed for these medically-unnecessary appointments will reduce the physician time and clinic space available for abortion procedures.

62.     By requiring an additional, medically-unnecessary trip for the mandated information, the Delay Requirement will further delay women from obtaining abortions.   In addition, it will increase the cost of the procedure itself as well as ancillary costs such as

transportation expenses, childcare expenses, and lost wages. It will also make it harder for a woman to prevent others from finding out about her pregnancy and decision to obtain an abortion.

63. The challenged requirements, individually and collectively, impose substantial obstacles on women seeking previability abortions in Tennessee.

Impossibility of Compliance with the ASTC Requirement Prior to Its Effective Date

64. The ASTC Requirement gives physician's offices that currently perform more than 50 abortions per year only 54 calendar days to become licensed as ASTCs.

65. Prior to May 22, 2015, Thomas C. Jessee, one of Plaintiffs' undersigned attorneys, contacted several Tennessee officials, including the General Counsel for the Tennessee Health Services and Development Agency and the Director of the Division of Health Care Facilities at the Tennessee Department of Health, to ask whether existing abortion clinics would have to obtain a CON prior to applying for an ASTC license. Both responded that it was unclear on the face of the proposed law whether a CON would be required for existing abortion facilities.

66. On May 22, 2015, Mr. Jessee emailed a letter to the Executive Director of the Tennessee Health Services and Development Agency, an independent agency responsible for processing CON applications by healthcare facilities, asking whether existing abortion clinics must obtain a CON prior to applying for an ASTC license.

67. By letter dated May 28, 2015, the Executive Director responded, in relevant part, that: "[T]he Health Services and Development Agency is seeking an opinion from the Tennessee Attorney General regarding whether a private physician's office practice performing more than fifty (50) surgical abortions in any calendar year prior to July 1, 2015 must obtain a CON before becoming an ASTC. We will update you upon receiving the opinion."

68. On June 11, 2015, the Attorney General of Tennessee issued an opinion that "the General Assembly did not intend to require such existing office practices to obtain a certificate of need prior to becoming licensed as ambulatory surgical treatment centers." Tenn. Att'y Gen. Op. No. 15-52, 2015 WL 3822469, at *1 (June 11, 2015). The Attorney General reasoned that "a certificate of need is generally required for the construction, development, other establishment, or modification of a health care institution" and "[a] practice that is already in existence would not appear to fall within the natural and ordinary meaning of these terms, which refer to the building of a new facility or the expansion of an existing facility." *Id.* at *3. It further reasoned that "[t]he fact that completion of the CON process generally requires at least several months provides additional support for our conclusion that Public Chapter 419 does not require existing practices that now come within the new ASTC definition to obtain a CON as a pre-condition to licensure as an ASTC, since requiring a CON would be tantamount to requiring something that is virtually impossible. *Id.* at *4.

69. On June 12, 2015, the Bristol and Nashville Clinics attempted to apply for ASTC licensure, but were told by an official at the Department that the required application form was not yet available. That form, annexed hereto as Exhibit 4 and incorporated herein by reference, was not posted on the Department's website or provided to Plaintiffs until June 16, 2015.

70. On June 18, 2015, the Bristol and Nashville Clinics each submitted a completed ASTC licensure application form to the Department, together with the $1,080.00 licensure fee.

71. Subsequently, Department officials told Mr. Jessee that the applications would not be processed until each clinic submitted a full set of architectural plans. Further, the applications would not be approved until the plans were reviewed and any facility renovations called for by the Department were completed and inspected during a site survey.

72.     On June 24, 2015, Mr. Jessee received letters from the Department acknowledging receipt of the application forms and fees from the Bristol and Nashville Clinics. These letters reiterated that site surveys of the clinics would be necessary and that architectural plans must be submitted before the required site surveys would be scheduled.

73.     The ASTC licensure process being enforced by the Department could not possibly be completed within the 54 calendar days provided by the statute, much less the 15 calendar days between the Department's posting of the required application form and the effective date of the statute.

74.     The ASTC requirement fails to provide fair notice that existing physician's offices that provide 50 or more abortions in a calendar year will be subject to full architectural review and required to comply with the building standards set forth in Tenn. Comp. R & Regs. 1200-08-10-.08 as a condition of ASTC licensure.

The ASTC Requirement Targets Abortion Clinics for the Imposition of Unique and Onerous Burdens But Provides No Health Benefits to Abortion Patients.

75.     Abortion is an extremely safe procedure, and abortion-related complications are rare.

76.     Because the risk of complications from abortion is so low, over 90% of abortions nationwide are performed in outpatient settings rather than in hospitals. The vast majority of these are performed in office-based settings (*i.e.*, doctors' offices and specialized clinics).

77.     Abortion-related complications do not occur at a higher rate when abortions are performed in an office-based setting as compared with ASTCs.

78.     Abortion is safer and less complex than many outpatient surgeries that Tennessee law does not require to be performed in an ASTC.

79. Leading medical associations, including the American College of Obstetricians & Gynecologists ("ACOG") and the American Medical Association ("AMA") oppose the imposition of ASTC requirements on abortion providers.

80. ASTC building standards are generally intended to enhance the safety of surgeries that involve cutting into sterile body tissue by creating an ultra-sterile operating environment. Surgical abortion, however, is not performed in this manner. Rather, it entails insertion of instruments into the uterus through the vagina, which is naturally colonized by bacteria. Accordingly, precautions aimed at maintaining a sterile environment, beyond basic cleanliness, hand-washing, and use of sterile instruments, provide no health or safety benefit to abortion patients.

81. The types of abortion procedures performed on an outpatient basis in Tennessee do not meet the definition of "invasive procedure" in the Facility Guidelines Institute ("FGI") 2010 Guidelines for Design and Construction of Hospitals and Outpatient Facilities.

82. The only purpose served by the ASTC Requirement is to reduce the availability of abortion services in Tennessee.

The Admitting-Privileges Requirement Targets Abortion Clinics for the Imposition of Unique and Onerous Burdens But Provides No Health Benefits to Abortion Patients.

83. Serious complications from abortion are exceedingly rare. Nationwide, less than one-quarter of one percent of abortion patients experience a complication that requires hospitalization.

84. In the rare instances when hospital treatment is required following an abortion, the quality of care that the patient receives at the hospital is not dependent on whether her abortion provider has admitting privileges there. Continuity of care is typically maintained by direct telephone communication between the hospital physician and the referring physician, as well as

16

transmission of the patient's medical records to the hospital. This is standard medical practice—not just in the abortion context but in all areas of medicine.

85. Most abortion-related complications arise after the patient has returned home following the procedure. If a patient experiences a serious complication when she is not at the facility, the appropriate course of action would be for her to go to the nearest emergency room, regardless of whether her abortion provider has admitting privileges at a different hospital.

86. The farther a patient must travel to obtain abortion care, the less likely she will be seek treatment at a hospital near the abortion clinic in the event of a serious complication.

87. Hospitals have broad discretion to set criteria for granting admitting privileges. Many hospitals consider criteria that are unrelated to a physician's qualifications and competence.

88. Many hospitals will not renew a physician's admitting privileges if the physician failed to admit a minimum number of patients in the preceding year. Because abortions so rarely result in serious complications, physicians who specialize in abortion seldom admit patients to a hospital.

89. Hospitals within Tennessee have varying requirements for privileges. Some require a certain number of patient admissions each year, some require physicians to reside within a certain distance from the hospital, others limit privileges to physicians who are directly employed by or under contract with the hospital, while still others require board certification. These criteria, unrelated to a physician's ability to provide high-quality abortion care, may nonetheless preclude him or her from obtaining privileges.

90. Under Tennessee law, hospitals are not required to afford physicians notice or an opportunity to be heard before admitting privileges are denied or terminated. *See City of*

*Cookeville ex rel. Cookeville Reg. Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 906-07 (Tenn. 2004). Instead, hospitals may unilaterally deny or terminate admitting privileges based on a "business decision." *Id.* at 907.

91. Standards promulgated by the nation's leading medical associations and accreditation bodies—including ACOG, the American College of Surgeons ("ACS"), the American Society of Anesthesiologists ("ASA"), the Accreditation Association for Ambulatory Health Care ("AAAHC"), the American Association for Accreditation of Ambulatory Surgery Facilities ("AAAASF"), and the Joint Commission—provide that, while medical facilities are expected to have mechanisms in place to ensure that physicians are qualified to perform the procedures they provide and that patients are assured continuity of care in the event of a complication, these mechanisms need not include hospital admitting privileges.

92. The only purpose served by the Admitting-Privileges Requirement is to reduce the availability of abortion services in Tennessee.

> Under Existing Tennessee Law, Abortion Patients Are Required to Participate in a Robust Informed Consent Process Prior to Obtaining an Abortion.

93. Independently of the Delay Requirement, Tennessee law imposes an obligation on physicians to obtain a patient's informed consent prior to treatment. *See* Tenn. Code Ann. § 29-26-118. To satisfy this obligation, a physician must "supply appropriate information to the patient . . . in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the [physician] practices in the community in which the [physician] practices and in similar communities." *Id.* Either the Delay Requirement is duplicative of Tenn. Code Ann. § 29-26-118, or it requires something that is not part of "the recognized standard of acceptable professional practice." *Id.*

94.     Tennessee's generally-applicable informed consent requirement ensures that patients participate in a robust informed-consent process prior to obtaining an abortion and that they are provided with "appropriate information" about the risks, benefits, and alternatives to abortion.

95.     Plaintiffs provide extensive counseling to their patients prior to an abortion procedure.  They ensure that each woman's decision to have an abortion is voluntary and fully-informed.

**VII.    CLAIMS FOR RELIEF**

<u>**COUNT I**</u>
**(Substantive Due Process)**

96.     The allegations of paragraphs 1 through 92 are incorporated as though fully set forth herein.

97.     The ASTC, Admitting-Privileges, and Delay Requirements—individually, collectively, and in conjunction with burdens imposed by other provision of Tennessee law—impose an undue burden on access to previability abortion in Tennessee in violation of the Due Process Clause of the Fourteenth Amendment.

<u>**COUNT II**</u>
**(Equal Protection)**

98.     The allegations of paragraphs 1 through 92 are incorporated as though fully set forth herein.

99.     The ASTC, Admitting-Privileges, and Delay Requirements each denies equal protection of the laws to Plaintiffs and their patients in violation of the Equal Protection Clause of the Fourteenth Amendment.

## COUNT III
### (Procedural Due Process)

100. The allegations of paragraphs 1 through 92 are incorporated as though fully set forth herein.

101. As applied to the Bristol and Nashville Clinics, the ASTC Requirement denies Plaintiffs Adams & Boyle, P.C., and Wesley F. Adams, Jr., M.D., procedural due process in violation of the Due Process Clause of the Fourteenth Amendment.

## COUNT IV
### (Vagueness)

102. The allegations of paragraphs 1 through 92 are incorporated as though fully set forth herein.

103. The ASTC Requirement is vague in violation of the Due Process Clause of the Fourteenth Amendment because it fails to provide fair notice of its requirements and encourages arbitrary and discriminatory enforcement.

## COUNT V
### (Unlawful Delegation)

104. The allegations of paragraphs 1 through 92 are incorporated as though fully set forth herein.

105. The Admitting-Privileges Requirement improperly delegates lawmaking authority to hospitals in violation of the Due Process Clause of the Fourteenth Amendment.

## VIII.   REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

A.   Issue a declaratory judgment that the ASTC Requirement is unconstitutional and unenforceable:

    a. on its face; and/or

    b. as applied to the Bristol and Nashville Clinics; and/or

B.   Issue a declaratory judgment that the Admitting-Privileges Requirement is unconstitutional and unenforceable:

    a. on its face; and/or

    b. as applied to any abortion provider who is unable to obtain the required admitting privileges for reasons unrelated to the physician's medical competency; and/or

C.   Issue a declaratory judgment that the Delay Requirement is unconstitutional and unenforceable:

    a. on its face; and/or

    b. as applied to any woman or group of women entitled to relief; and/or

    c. insofar as it requires a woman to be informed "in person" of certain information; and/or

    d. insofar as it requires certain information to be provided by "the attending physician who is to perform the abortion" or "the referring physician"; and/or

D.   Permanently enjoin Defendants and their employees, agents, and successors in office from enforcing the ASTC Requirement:

    a. on its face; and/or

    b. as applied to the Bristol and Nashville Clinics; and/or

E.   Permanently enjoin Defendants and their employees, agents, and successors in office from enforcing the Admitting-Privileges Requirement:

  a.   on its face; and/or

  b.   as applied to any abortion provider who is unable to satisfy it after reasonable effort; and/or

F.   Permanently enjoin Defendants and their employees, agents, and successors in office from enforcing the Delay Requirement:

  a.   on its face; and/or

  b.   as applied to any woman or group of women for whom it would serve as an undue burden on access to previability abortion services; and/or

  c.   insofar as it requires a woman to be informed "in person" of certain information; and/or

  d.   insofar as it requires certain information to be provided by "the attending physician who is to perform the abortion" or "the referring physician"; and/or

G.   Grant Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988; and/or

H.   Grant such other and further relief as this Court may deem just, proper, and equitable.

Respectfully submitted,

*/s/ Scott P. Tift*
Scott P. Tift
David W. Garrison
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2202
Fax: (615) 252-3798
stift@barrettjohnson.com
dgarrison@barrettjohnson.com

Thomas C. Jessee
Jessee & Jessee
P.O. Box 997
Johnson City, TN 37605
Tel: (423) 928-7175
jjlaw@jesseeandjessee.com

Ilene Jaroslaw*
Stephanie Toti*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Tel: (917) 637-3600
Fax: (917) 637-3666
ijaroslaw@reprorights.org
stoti@reprorights.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *First Amended Complaint* has been served on the following counsel of record through the Electronic Filing System on this 10th day of August, 2015:

> Steven A. Hart
> Sue A. Sheldon
> Michael A. Meyer
> Office of the Attorney General
> 425 5th Avenue North
> Nashville, TN 37219

I further certify that a true and correct copy of the forgoing *First Amended Complaint* will be served on counsel for Defendants Funk, Weirich, and Staubus upon the issuance of summonses for each individual, in conjunction with the service of those summonses.

*/s/ Scott P. Tift*
Scott P. Tift
