IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAMS & BOYLE, P.C., on behalf of itself and its patients; MEMPHIS CENTER FOR REPRODUCTIVE HEALTH, on behalf of itself and its patients; PLANNED PARENTHOOD GREATER MEMPHIS REGION, on behalf of itself and its patients; and PLANNED PARENTHOOD OF MIDDLE AND EAST TENNESSEE, on behalf of itself and its patients, <br><br>　　　　　　　　　　　Plaintiffs, <br><br>　v. <br><br>HERBERT H. SLATERY III, Attorney General of Tennessee, in his official capacity; JOHN DREYZEHNER, M.D., Commissioner of the Tennessee Department of Health, in his official capacity; SUBHI D. ALI, M.D., President of the Tennessee Board of Medical Examiners, in his official capacity; GLENN R. FUNK, District Attorney General of Metropolitan Nashville and Davidson County, in his official capacity; AMY WEIRICH, District Attorney General of Shelby County, in her official capacity; BARRY P. STAUBUS, District Attorney General of Sullivan County, in his official capacity; and CHARME P. ALLEN, District Attorney General of Knox County, in her official capacity, <br><br>　　　　　　　　　　　Defendants. | CIVIL ACTION <br><br> CASE NO. 3:15-cv-00705 <br><br> JUDGE FRIEDMAN <br><br> MAGISTRATE JUDGE FRENSLEY |

**PLAINTIFFS' PRETRIAL BRIEF**

# INTRODUCTION

Prior to July 1, 2015, Tennessee women considering abortion were able to take all the time they needed to think about their options. Those who made the decision to end a pregnancy were able do so on the day of their scheduled appointment, after receiving appropriate counseling and giving their informed consent, just as patients do for a variety of other medical procedures. Senate Bill 1222 (hereinafter the "Act" or the "Delay Law") supplanted this individualized medical determination with a rigid, one-size-fits-all mandate that forces a woman to make an additional, medically unnecessary trip to her health care provider, and then turn around, go home, and delay her abortion by at least 48 hours—against her will and her physician's medical judgment. The State imposes no such mandatory delay for any other medical procedure.

At trial, Plaintiffs will present evidence about the serious burdens imposed by the Delay Law, burdens that far outweigh any supposed benefit conferred. The evidence will show that as a result of the Delay Law, many women have been substantially delayed by days and even weeks, pushing them later in pregnancy and exposing them to increased medical risks. Some women have been prevented from obtaining a medication abortion even when it was strongly preferred; others have been delayed beyond the first trimester or past the gestational cutoff entirely. Many have suffered physical and emotional harms from being forced to remain pregnant after they have decided to end the pregnancy. The Act's burdens are especially onerous for low-income women, victims of sexual assault or intimate partner violence, women who seek abortion due to a fetal anomaly, and those who have to travel to reach a provider. These burdens would violate patients' constitutional rights even if the waiting period reverted from 48- to 24-hours, as contemplated by Section (d)(2) of the Act. Finally, Plaintiffs' evidence will show that the Act facially discriminates on the basis of sex and perpetuates harmful and outdated gender stereotypes.

## I. Plaintiffs' Witnesses

Jessica Young, M.D., a board-certified OB/GYN and former Medical Director of Planned Parenthood of Middle and East Tennessee, will present an overview of abortion methods and the scientific literature on the safety of abortion. Dr. Young will also testify that other comparable, outpatient gynecological procedures are performed the same day as a patient's initial consultation.

Evidence presented by Dr. Young, Dr. Sarah Wallett, the former Medical Director of Planned Parenthood Greater Memphis Region and Planned Parenthood of Tennessee and North Mississippi, and Rebecca Terrell, Executive Director of Memphis Center for Reproductive Health, regarding counseling and informed consent practices at Tennessee health centers will show that prior to the Act's effective date: i) most abortion patients were certain of their decision by the time of their initial visit; ii) every patient was able to take as much time as she needed to reach her decision; iii) all patients received medically accurate information about the procedure, including its risks, benefits, and alternatives; and iv) providers already ensured that patients gave voluntary, uncoerced, and informed consent. In addition, Kenneth Goodman, Ph.D., a professor of medical ethics, will describe the principles of medical ethics and informed consent and explain how the Act's requirements undermine, rather than further, these principles. Dr. Goodman's testimony, that mandatory delay laws subvert fundamental tenets of medical ethics and informed consent and erode the physician-patient relationship, is unrebutted by Defendants.

Dr. Young, Dr. Wallett, and Ms. Terrell will also describe the logistical and financial burdens imposed on patients as a result of the Act, including transportation and childcare difficulties, escalating costs, and loss of privacy, as well as the operational and financial burdens imposed on health centers and staff, including scheduling difficulties, lengthier wait times, and reduced capacity to provide timely, patient-centered care. Sheila Katz, Ph.D., a sociologist with

expertise in gender, poverty, and social policy, will testify about low-income women's struggles accessing health care, including transportation and other logistical challenges, financial obstacles, and social-psychological hurdles, all of which are compounded by the Delay Law. Sara McClelland, Ph.D., a researcher and professor of psychology with expertise in the impact of stigma on women's psychological well-being, will present evidence that the Act may increase gender-based discrimination, trigger negative stereotypes, and create stigma. Dr. Katz's and Dr. McClelland's opinions are unrebutted.

## II. The Delay Law Violates the Constitution's Due Process and Equal Protection Guarantees.

### A. *Plaintiffs' evidence will show that the Delay Law unduly burdens access to abortion.*

An abortion restriction is constitutionally infirm if its "purpose or effect" is to "plac[e] a substantial obstacle in the path of a woman seeking an abortion." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992). The Supreme Court recently clarified that the undue burden standard "requires that courts consider the burdens a law imposes on abortion access together with the benefits" it confers. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016) (citing *Casey*, 505 U.S. at 887–98). This searching judicial review requires courts to consider the record evidence and "weigh[] the asserted benefits against the burdens." *Id*. at 2310.

Defendants assert that *Casey* signifies the Court's tacit approval of *all* waiting periods, no matter how extreme. But even if *Casey* had upheld the equivalent of the Delay Law (and it did not), that would not foreclose Plaintiffs' challenge. Indeed, shortly after *Casey* was decided, Justice Souter noted that other litigants were "free to challenge similar restrictions." *Casey*, 510 U.S. 1309, 1313 (1994) (Souter, J., in chambers); *see also Karlin v. Foust*, 188 F.3d 446, 485 (7th Cir. 1999) ("While a twenty-four hour waiting period . . . has been found not to impose an undue burden on Pennsylvania women based on the circumstances of that state at the time the Court

3

decided *Casey,* a similar provision in another state[] . . . could well be found to impose an undue burden on women in that state depending on the interplay of factors."). The Seventh Circuit's recent affirmance of a preliminary injunction against Indiana's requirement that abortion patients undergo an ultrasound and receive certain information at least 18 hours prior to their procedure is instructive. *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't. of Health*, 896 F.3d 809 (7th Cir. 2018). Defendants argued that *Casey* established "a blanket stamp of approval" on all waiting periods. *Id*. at 831. But as the court explained, "the burden and benefit weighing is context-specific;" thus, "a statute valid as to one set of facts may be invalid as to another." *Id*.

Plaintiffs will present extensive evidence at trial of the harms the Delay Law imposes, given the lengthy wait times patients are experiencing, the shortage of providers,[1] the increased medical risks for patients pushed beyond the gestational age when medication abortion is available or beyond the gestational cutoff for a clinic, the number of abortion patients who are poor or low-income, the burdens on those who must travel in order to receive care, and the heightened risks for victims of domestic abuse. Courts across the country have recognized real-world burdens such as these in striking down abortion restrictions as imposing an undue burden.[2]

Finally, Plaintiffs will show that the supposed benefits of the Delay Law, if any, are far outweighed by the burdens imposed. Under *Whole Woman's Health*, courts must consider whether credible evidence exists to show that a challenged law *actually* furthers the state interest asserted.

---

[1] While Tennessee currently has only seven abortion providers, Pennsylvania had 81 at the time of the *Casey* decision. *See* Rachel K. Jones et al., *Abortion in the United States: Incidence and Access to Services, 2005*, 40 Persp. Sexual & Reprod. Health 6, 11 Table 3 (2008), *available at* https://www.guttmacher.org/sites/default/files/article_files/4000608.pdf.

[2] *See, e.g.*, *Whole Woman's Health*, 136 S. Ct. at 2313, 2318 (finding undue burden where, "in light of the virtual absence of any health benefit," challenged law forced patients "to travel long distances to get abortions in crammed-to-capacity superfacilities" where they were "less likely to get . . . individualized attention, serious conversation, and emotional support").

136 S. Ct. at 2311. Here, no such evidence exists; moreover, Plaintiffs' rebuttal experts, Drs. Jeffrey Huntsinger and Antonia Biggs, will refute the notion that delay laws actually improve women's decision-making. *Cf. Planned Parenthood of the Heartland v. Reynolds*, 915 N.W.2d 206, 241 (Iowa 2018) (concluding, after conducting an "objective review of the evidence," that "women do not change their decision to have an abortion due to a waiting period").

**B.  *Plaintiffs' evidence will show that the Delay Law violates the Equal Protection Clause.***

Statutory classifications that treat individuals differently based on sex require close judicial scrutiny under the Equal Protection Clause. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017); *Frontiero v. Richardson*, 411 U.S. 677, 682 (1973); *Reed v. Reed*, 404 U.S. 71, 75 (1971). Heightened scrutiny is necessary given "the real danger that government policies . . . may be reflective of archaic and overbroad generalizations about gender." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994). The Supreme Court has invalidated state and federal statutes that discriminated on the basis of sex by reinforcing gendered stereotypes about women and their role in society.[3]  As Plaintiffs will show at trial, requiring women seeking abortions to first receive certain state-mandated information and then undergo a mandatory, state-imposed delay discriminates on the basis of sex and sends the message that women are not competent, capable decision-makers. The Act thus violates the Equal Protection Clause by restricting women's ability to make autonomous, voluntary decisions concerning their reproductive lives and their medical care, while no such restrictions are imposed on medical decision-making by men.

---

[3] *See, e.g.*, *United States v. Virginia*, 518 U.S. 515, 541–42 (1996) (invalidating VMI's male admission policy where proffered justification, that women were ill-suited to the school's adversarial method of training, was grounded in overbroad generalizations and stereotypes); *J.E.B.*, 511 U.S. at 139 n.11 (invalidating Alabama's gender-based peremptory challenges, which were based upon "outmoded notions of the relative capabilities of men and women"); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 643 (1975) (invalidating federal statute that presumed "the earnings of female wage earners do not significantly contribute to their families' support").

Dated: August 16, 2019

Respectfully submitted,

| | |
|---|---|
| /s/ Jason M. Moff | Scott P. Tift |
| Michael J. Dell* | David W. Garrison |
| Jason M. Moff* | Barrett Johnston Martin & Garrison, LLC |
| Irene Weintraub* | 414 Union Street, Suite 900 |
| Timur Tusiray* | Nashville, TN 37219 |
| Kramer Levin Naftalis & Frankel LLP | Tel: (615) 244-2202 |
| 1177 Avenue of the Americas | Fax: (615) 252-3798 |
| New York, NY 10036 | stift@barrettjohnson.com |
| Tel: 212-715-9129 | dgarrison@barrettjohnson.com |
| Tel: 212-715-9113 | |
| mdell@kramerlevin.com | Thomas C. Jessee |
| jmoff@kramerlevin.com | Jessee & Jessee |
| iweintraub@kramerlevin.com | P.O. Box 997 |
| ttusiray@kramerlevin.com | Johnson City, TN 37605 |
| | Tel: (423) 928-7175 |
| *Attorneys for Plaintiffs* | jjlaw@jesseeandjessee.com |

Maithreyi Ratakonda*            Autumn Katz*
Melissa Cohen*                  Michelle Moriarty*
Planned Parenthood Federation of America   Hailey Flynn*
123 William St., 9th Floor      Center for Reproductive Rights
New York, NY 10038              199 Water Street, 22nd Floor
Tel: (212) 261-4649             New York, NY 10038
Fax: (212) 247-6811             Tel: (917) 637-3600
mai.ratakonda@ppfa.org          Fax: (917) 638-3666
melissa.cohen@ppfa.org          akatz@reprorights.org
                                mmoriarty@reprorights.org
*Attorneys for Plaintiff Planned Parenthood Greater*   hflynn@reprorights.org
*Memphis Region d/b/a Planned Parenthood of*
*Tennessee and North Mississippi*     Marc Hearron*
                                Center for Reproductive Rights
*Admitted *pro hac vice*        1634 Eye Street, NW, Suite 600
                                Washington, DC 20006
                                Tel: (202) 524-5539
                                mhearron@reprorights.org

*Attorneys for Adams & Boyle, P.C. and Memphis Center for Reproductive Health*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Plaintiffs' Pretrial Brief* has been served on the following counsel of record through the Electronic Filing System on this 16th day of August, 2019:

Steven Ashley Hart
Sue A. Sheldon
Alexander Stuart Rieger
Lindsay H. Sisco
Kathryn Baker
Matt D. Cloutier
Amber L. Seymour
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-5683
Fax: (615) 532-5683
Steve.Hart@ag.tn.gov
Sue.Sheldon@ag.tn.gov
Alex.Rieger@ag.tn.gov
Lindsay.Sisco@ag.tn.gov
Kathryn.Baker@ag.tn.gov
Matt.Cloutier@ag.tn.gov
Amber.Seymour@ag.tn.gov

/s/ Jason M. Moff
*Attorney for Plaintiffs*