IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADAMS & BOYLE, P.C., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 3:15-cv-0705 ) Judge Friedman / Frensley |
| HERBERT H. SLATERY III, et al., | ) ) |
| Defendants. | ) |

## DEFENDANTS' PRETRIAL BRIEF

In *Roe v. Wade*, the Supreme Court recognized a constitutional right to abortion. 410 U.S. 113, 153 (1973). But that right is not without limits. *See id.* at 153–54. Since the right was first recognized, states have regulated abortion to further their legitimate interests—including maternal health and fetal life. *See id.* at 154, 163. To that end, states across the country have enacted waiting period laws. These laws ensure that prospective abortion patients have time to receive effective informed consent, weigh their options, and to consider information provided by the abortion facilities. Recognizing these benefits, federal courts have consistently upheld waiting period laws. *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 887 (1992). They have done so even when these laws have made it more expensive and time-consuming to obtain abortions.

Tennessee's law—like those enacted by many other states—helps to ensure that abortion decisions are made knowingly, competently, and voluntarily. Yet despite these benefits, and despite the consistent judicial approval of similar laws, Plaintiffs ask this Court to hold that Tennessee's waiting period law violates the Constitution. Because the challenged law permissibly "facilitates the wise exercise" of the right to abortion, this Court should not do so. *See id.*

1

**I. ARGUMENT**

Plaintiffs challenge Tennessee's law in two ways: they argue first that the law is an undue burden on women seeking abortions, and second, that it violates the Equal Protection Clause. (*See* D.E. 70, ¶¶ 80, 82.) As an initial matter, Plaintiffs' equal protection argument is meritless. Abortion regulations are not subject to the equal protection scrutiny analysis; they are analyzed under the undue burden framework. *See Casey*, 505 U.S. at 872–76 (rejecting the traditional scrutiny analysis and trimester framework set out in *Roe*).[1] A regulation may be an undue burden when it is a "substantial obstacle to a woman's choice to undergo an abortion" in a "large fraction of the cases in which [it] is relevant." *Id.* at 925. But this is only part of the analysis; courts must also consider the benefits that the challenged regulation confers. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016) (citing *Casey*, 505 U.S. at 887–98, 899–901).

**A. Tennessee's Waiting Period Law is not a Substantial Obstacle.**

Since the Supreme Court recognized the right to abortion, waiting period laws have been routinely upheld. In *Casey*, for example, a plurality of the Supreme Court upheld a 24-hour waiting period law. *See Casey*, 505 U.S. at 887. That law required that "at least 24 hours before performing an abortion a physician inform the woman of the nature of the procedure, the health risks of the abortion and of childbirth," and the "probable gestational age of the unborn child." *Id.* at 881.

The district court found that "because of the distances many women must travel to reach an abortion provider, the practical effect will often be a delay of much more than a day because the waiting period requires that a woman seeking an abortion make at least two visits to the doctor." *Id.* Ultimately, the district court concluded that "for those women that have the fewest financial

---

[1] *See also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 544–45, 549 (9th Cir. 2004); *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 172–73 (4th Cir. 2000); *Planned Parenthood of Mid-Missouri and E. Kansas, Inc. v. Dempsey*, 167 F.3d 458, 464 (8th Cir. 1999).

2

Case 3:15-cv-00705   Document 180   Filed 08/16/19   Page 2 of 7 PageID #: 2332

resources, those who must travel long distances, and those who have difficulty explaining their whereabouts to husbands, employers, or others, the 24-hour waiting period will be particularly burdensome." *Id.* (internal quotation marks omitted).

Still, a plurality of the Supreme Court upheld the waiting period. *Id.* Even though the law "ha[d] the effect of increasing the cost and risk of delay of abortions" and had a disproportionate impact on low-income women, it did not unduly burden the right to abortion. *Id.* at 886. The Court explained that "[w]hether a burden falls on a particular group is a distinct inquiry from whether it is a substantial obstacle even as to the women in that group." *Id.* at 887. Thus, based on the record—including those burdens identified by the district court—the Court concluded that Pennsylvania's law was not an undue burden.[2] *Id.*

This Court should follow suit. The record in this case contains no facts that compel a conclusion different from that reached in *Casey*. Plaintiffs' experts opine that the law negatively impacts low-income women, reinforces stereotypes about women, and can have the effect of delaying abortions for more than 48 hours. But these assertions—even if they are true—are not enough to distinguish Tennessee's law from the law upheld in *Casey*. Indeed, the burdens that Plaintiffs' experts discuss are the same ones that the Supreme Court considered. The only notable difference between Tennessee's law and the law upheld in *Casey* is that Tennessee mandates a waiting period of 48 hours, rather than 24. Plaintiffs, however, can offer no constitutional basis for distinguishing between those two time periods. The burdens that Plaintiffs identify are not unique to 48-hour waiting periods. Rather, they are inherent in any waiting period law that requires two

---

[2] This Circuit has recognized and applied the *Casey* plurality's conclusion with approval. *See Cincinnati Women's Services, Inc. v. Taft*, 468 F.3d 361, 366, 372–74 (6th Cir. 2006) (applying *Casey* and upholding a 24-hour waiting period law even though the law delayed abortions for up to two weeks and prevented some women from obtaining abortions altogether).

3

visits. And despite these burdens, waiting periods have been a widely used—and consistently upheld—form of abortion regulation for more than two decades. *See, e.g.*, *Casey*, 505 U.S. at 887; *Taft*, 468 F.3d at 373–74; *Karlin v. Foust*, 188 F.3d 446, 485–88 (7th Cir. 1999).

### B. Tennessee's Waiting Period Law Benefits Women.

The framework set out in *Casey* requires courts to consider not only the burdens that a law imposes, but also the benefits that it confers. *Whole Woman's Health*, 136 S. Ct. at 2309. Tennessee's waiting period benefits women seeking abortions. It does so by guaranteeing that they have the information and time to make deliberate and informed decisions. Many women who seek abortions "are not aware of the nature of abortion methods and procedural risks prior to arriving [at] a clinic." (Coleman Expert Rep. at ¶ 6.) These women often "experience high levels of ambivalence, uncertainty, and decisional distress, precluding effective decision-making without sufficient time." (*Id.* at ¶ 7.) Difficult and highly personal decisions, like the decision to terminate a pregnancy, benefit from additional time and information. (*See id.* at ¶¶ 6, 8.)

These same benefits were recognized by a plurality of the Supreme Court in *Casey*. There, the Court acknowledged that there is a "substantial government interest justifying a requirement that a woman be apprised of the health risks of abortion and childbirth." *Casey*, 505 U.S. at 882. The Court went on to note that "[t]he idea that important decisions will be more informed and deliberate if they follow some period of reflection does not strike us as unreasonable, particularly where the statute directs that important information become part of the background of the decision." *Id.* at 885. On that basis, the Court concluded that Pennsylvania's law "facilitate[d] the wise exercise" of the right to abortion and was "not an undue burden on that right." *Id.* at 887.

So too here. Tennessee's waiting period provides the time to consider the informed-consent information received from the first visit—this is especially critical since before the enactment of

4

the waiting period, the time from the start of the pre-abortion meeting with the physician to the end of the abortion procedure itself could take as little as ten minutes.[3] (Young Dep. at 55, 59–60.) The additional time provided by Tennessee's law ensures that the decision to abort is not rushed and is instead reached after conscious deliberation. Consider two scenarios. In one, some women who appeared unsure of their decision to abort at their initial consultation were more confident in their decision on their second visit. (Young Dep. at 165.) And in the other, some women chose not to schedule second appointments, or simply chose not to return. (*Id.* at 115–16.) Both scenarios represent a benefit: in the first, the waiting period benefits mental health by allowing for an increase in decisional certainty, and in the second, the waiting period furthers the State's interest in protecting fetal life by offering prospective abortion patients an opportunity to make a different choice.

## II. CONCLUSION

The evidence at trial will show that Defendants are entitled to prevail as a matter of law. Both the Supreme Court and this Circuit have made it clear that waiting period laws will be upheld so long as they do not unduly burden a woman's right to terminate her pregnancy. *Casey*, 505 U.S. 872–74; *see also Taft*, 468 F.3d at 372–74. Tennessee's law passes this test. The waiting period is not a substantial obstacle to a large fraction of women affected by the law—a threshold requirement to show an undue burden. And not only that, the law also benefits prospective abortion patients by guaranteeing the opportunity to make a fully informed and deliberate decision. *See Casey*, 505 U.S. at 882–85. At bottom, "the right protected by *Roe* is a right to decide to terminate

---

[3] During this limited time, the physician also reviews patient allergies, medications, medical history, obstetric history, surgical history, and contraceptive history. (Young Dep. 59.) The physician may also discuss how the patient is feeling and answer questions about the procedure, including questions about possible side effects and what the patient should expect at home. (*Id.*)

a pregnancy free of undue interference by the State." *Id.* at 887. Because Tennessee's waiting period law—like the informed consent requirement at issue in *Casey*—"facilitates the wise exercise of that right, it cannot be classified as an interference with the right *Roe* protects." *See id.*

        Respectfully submitted,

        HERBERT H. SLATERY III
        Attorney General and Reporter

        s/ *Matthew D. Cloutier*
        STEVEN A. HART (BPR # 07050)
        SUE A. SHELDON (BPR #15295)
        ALEXANDER S. RIEGER (BPR# 029362)
        LINDSAY H. SISCO (BPR # 026361)
        MATTHEW D. CLOUTIER (BPR # 036710)
        AMBER L. SEYMOUR (BPR# 036198)
        Office of Tennessee Attorney General
        P. O. Box 20207
        Nashville, Tennessee  37202
        (615) 741-7908
        steve.hart@ag.tn.gov
        sue.sheldon@ag.tn.gov
        alex.rieger@ag.tn.gov
        lindsay.sisco@ag.tn.gov
        matt.cloutier@ag.tn.gov
        amber.seymour@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice has been served on the following counsel of record through the Electronic Filing System on this 16th day of August, 2019:

Scott P. Tift
David W. Garrison
Barrett Johnston Martin & Garrison, LLC,
Bank of America Plaza,
414 Union Street, Suite 900
Nashville, TN 37219
stift@barrettjohnson.com
dgarrison@barrettjohnson.com

Thomas C. Jessee
Jessee & Jessee
P.O. Box 997
Johnson City, TN 37605
jjlaw@jesseeandjessee.com

Autumn Katz
Hailey Flynn
Michelle Moriarty
Marc Hearron
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
akatz@reprorights.org
hflynn@reprorights.org
mmoriarty@reprorights.org

Maithreyi Ratakonda
Melissa Cohen
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
mai.ratakonda@ppfa.org
Melissa.cohen@ppfa.org

Michael J. Dell
Jason M. Moff
Irene Weintraub
Timur Tusiray
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
mdell@kramerlevin.com
jmoff@kramerlevin.com
iweintraub@kramerlevin.com
ttusiray@kramerlevin.com

Thomas H. Castelli
American Civil Liberties Union
PO Box 120160
Nashville, TN 37212
tcastelli@aclu-tn.org

*s/ Matthew D. Cloutier*
**MATTHEW D. CLOUTIER**