IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ADAMS & BOYLE, P.C., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Docket No. 3:15-cv-0705 Judge Friedman / Frensley |
| HERBERT H. SLATERY III, et al., | ) ) | |
| Defendants. | ) | |

## RESPONSE TO PLAINTIFFS' PRETRIAL BRIEF

"Abortion is a unique act." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 852 (1992). It is "an act fraught with consequences for others: for the woman who must live with the implications of her decision; for the persons who perform and assist in the procedure"; and "for the spouse, family, and society which must confront the knowledge that these procedures exist." *Id.* Recognizing the unique status of abortion, the Supreme Court has upheld reasonable regulations—including waiting periods—even where these regulations have made abortions more inconvenient and expensive. *See id.* at 887. But Plaintiffs now ask this Court to strike down a Tennessee law designed to further the state's interests in maternal health (through effective and deliberate informed consent) and fetal life by advancing a legal theory contrary to *Casey*'s holding. This Court should not do so.

## ARGUMENT

Plaintiffs challenge Tennessee's waiting period law under both the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*See* D.E. 70, ¶¶ 80, 82.) They allege that the law violates the Equal Protection Clause by discriminating on the basis of sex and perpetuating

1

gender stereotypes. And they contend that the law violates the Due Process Clause because it is an undue burden on women seeking abortions. Both arguments fail. Plaintiffs' equal protection argument has no support in existing law, and their undue burden argument fails to show how Tennessee's law is different from laws upheld by the Supreme Court and the Sixth Circuit.

**I.     Plaintiffs' Equal Protection Argument Has No Support in Existing Law.**

Plaintiffs argue that Tennessee's waiting period law—and indeed every abortion waiting period law—is a *per se* violation of the Equal Protection Clause. This argument has two critical flaws. First, abortion regulations are not subject to equal protection scrutiny. Instead, because of the unique state interests implicated by the abortion decision—maternal health and fetal life—abortion regulations are analyzed under the undue burden framework. *See Casey*, 505 U.S. at 872–76 (rejecting the traditional scrutiny analysis applied in *Roe*). As a result, equal protection claims in the abortion context collapse into this undue burden analysis.[1] Replacing the traditional scrutiny analysis is essential in cases like this one. Any other approach would create an end-run around the undue burden analysis by permitting plaintiffs whose claim fails under that test to recast their challenge as an equal protection claim to gain the advantage of a higher level of scrutiny.

And second, even if Plaintiffs' equal protection claim were subject to the traditional scrutiny analysis, it would still fail. Equal protection claims alleging sex-based discrimination are

---

[1] Several other circuits have reached this conclusion. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 544–45 (9th Cir. 2004) ("*Casey* defined a new standard of judicial review for determining when courts can recognize burdens on [abortion rights] as unconstitutional and when they cannot, replacing the traditional scrutiny analysis with the undue burden test."); *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 172–73 (4th Cir. 2000) (*Casey* "does not apply the traditional strict-scrutiny standard which protects fundamental rights. Rather, the court adopted an 'undue burden' standard."); *Planned Parenthood of Mid-Missouri and E. Kan., Inc. v. Dempsey*, 167 F.3d 458 464 (8th Cir. 1999) ("In *Casey*, the Supreme Court set out a new standard of review for regulations that touch upon the right to abortion.")

2

subject to intermediate scrutiny. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S.Ct. 1678, 1690 (2017). Under this level of scrutiny, the challenged law will be upheld so long as it "serve[s] important governmental objectives" and is "substantially related to achievement of those objectives." *Id.* Tennessee's law passes this test. The law exists to further the state's interests in women's health and fetal life. These interests are important and can justify limitations on the right to abortion. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 154, 163 (1973).

## II. Tennessee's Law Is Not an Undue Burden.

Plaintiffs also argue that Tennessee's law is an undue burden on women seeking abortions. They claim that Defendants' argument is that "*Casey* signifies tacit approval of all waiting periods, no matter how extreme." (D.E. 179, 3, PageID #2326.) But Defendants have never argued that *Casey* forecloses the possibility of any challenge to a state waiting period law. Rather, Defendants argue that because Plaintiffs cannot show that *Tennessee's* waiting period is meaningfully different from the ones upheld by the Supreme Court and Sixth Circuit, their undue burden challenge must necessarily fail.

In *Casey*, a plurality of the Supreme Court upheld a waiting period law requiring that "at least 24 hours before performing an abortion a physician inform the woman of the nature of the procedure, the health risks of the abortion and of childbirth," and the "probable gestational age of the unborn child." *Casey*, 505 U.S. at 881. The Court acknowledged that "because of the distances many women must travel to reach an abortion provider, the practical effect will often be a delay of much more than a day because the waiting period requires that a woman seeking an abortion make at least two visits to the doctor. *Id.* The Court also accepted that "the waiting period ha[d] the effect of increasing the cost and risk of delay of abortions," especially for low income women. *Id.* Still, the Court concluded that the law was not an undue burden. *Id.* at 887.

3

In *Cincinnati Women's Services, Inc. v. Taft*, the Sixth Circuit upheld a law that required women seeking abortions to "attend an in-person meeting with a physician for informed-consent purposes." 468 F.3d 361, 364 (6th Cir. 2006). This law, coupled with Ohio's existing 24-hour waiting period, meant that a woman must make two visits—at least 24 hours apart—to obtain an abortion. *See id.* at 364–65. But while the law required a waiting period of only 24 hours, the court noted that it could have the effect of delaying abortions for weeks. *Id.* at 366. The court also observed that the appellants in *Taft* had "improved on the *Casey* record" by showing that the challenged statute would deter "approximately 6 to 12.5" out of every 1,000 women[2] "from procuring an abortion as surely as if [Ohio] has outlawed abortion in all cases." *Id.* at 373 (alteration in original). But even though Ohio's law required two visits, had the effect of delaying abortions for weeks, and in some cases prevented women from obtaining abortions altogether, the Sixth Circuit held that the law "survive[d] constitutional scrutiny." *Id.* at 366, 372–74.

Here, Plaintiffs allege the same burdens as did the plaintiffs in *Casey* and *Taft*. For example, Plaintiffs claim that "many women have been substantially delayed by days and even weeks" and that other women "have been delayed beyond the first trimester or past the gestational cutoff entirely." (D.E. 179, 1, PageID #2324.) But these alleged burdens are not unique to Tennessee's waiting period. Rather, they are the same as those alleged in Pennsylvania and Ohio. *See Casey*, 505 U.S. at 885–86 (acknowledging that in Pennsylvania, "because of the distances many women must travel to reach an abortion provider, the practical effect will often be a delay of much more

---

[2] The Sixth Circuit declined to adopt the smaller denominator (between 50 and 100 women) proposed by the abortion providers. The providers argued that the number of women who would not obtain abortions as a result of Ohio's law "should be compared against" the 50 to 100 women "actually affected by [it]." *Taft*, 468 F.3d at 373. The court disagreed. *Id.* But even if the court had accepted the providers' proposed denominator, it would not have found a substantial burden under *Casey*. *See id.* at 374 (explaining that "the term 'large fraction,' which, in a way, is more conceptual than mathematical, envisions something more than the 12 out of 100 women identified here").

4

than a day."); *see also Taft*, 468 F.3d at 373 (noting that for some women, Ohio's law "would likely deter them 'from procuring an abortion as surely as if [Ohio] ha[d] outlawed abortion in all cases'"). Yet in both of those states, the laws were upheld.

Plaintiffs also argue that the requirements of Tennessee's law are "especially onerous" for several categories of women seeking abortions. This argument fails as well. As the Court explained in *Casey*, "[w]hether a burden falls on a particular group is a distinct inquiry from whether it is a substantial obstacle even as to the women in that group." *Casey*, 505 U.S. at 887. Indeed, waiting period laws have been upheld despite their disproportionate impact on specific groups of women. *See id.* at 886–87 ("We disagree with the District Court's conclusion that the 'particularly burdensome' effects of the waiting period on some women require its invalidation."); *see also Taft*, 468 F.3d at 372–73 (concluding that Ohio's waiting period law was not an undue burden even though there were some women "who, due to domestic abuse, [could not] meet the in-person informed consent requirement without grave risk of retaliation").

In sum, both this circuit and the Supreme Court have upheld waiting period laws despite their potential burdensome effects. Plaintiffs cannot show any meaningful difference between the burdens allegedly imposed by Tennessee's law and those of the laws upheld in prior cases.[3] Nor can they dismiss the benefits the law confers. Since Tennessee's law was enacted, more than 2,000 women have declined to obtain abortions after completing their initial informed consent visits. (*See* Pls.' Fourth Supp. Interrog. Resp., 3.) These failures are fatal to their undue burden claim.

---

[3] Plaintiffs point out that Pennsylvania had more abortion providers when *Casey* was decided than Tennessee does now. But this is irrelevant. The proper inquiry is whether Tennessee's law is an undue burden. And while the number of abortion clinics can play into that inquiry, it only does so if the lack of providers increases the burden for a large fraction of women seeking abortions. Here, Tennessee's law has not decreased the number of providers. And even if it had, the burdens Plaintiffs allege are the same as those alleged in *Casey*, which were not enough to render the law an undue burden. *See Casey*, 505 U.S. at 886.

5

# CONCLUSION

Plaintiffs offer two avenues for this Court to strike down Tennessee's law. This Court should not take either. The equal protection route is novel and wholly unsupported by existing law. And the undue burden path does not lead to the invalidation of Tennessee's law because Plaintiffs cannot distinguish the law from those upheld in the past. For these reasons, as well as those previously stated in Defendants' principal pretrial brief, this Court should reject Plaintiffs' arguments and should hold that Tennessee's waiting period law is a constitutional exercise of the State's authority to further its interests in fetal life and maternal health.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Matthew D. Cloutier*
STEVEN A. HART (BPR # 07050)
SUE A. SHELDON (BPR #15295)
ALEXANDER S. RIEGER (BPR# 029362)
LINDSAY H. SISCO (BPR # 026361)
MATTHEW D. CLOUTIER (BPR # 036710)
AMBER L. SEYMOUR (BPR# 036198)
Office of Tennessee Attorney General
P. O. Box 20207
Nashville, Tennessee  37202
(615) 741-7908
steve.hart@ag.tn.gov
sue.sheldon@ag.tn.gov
alex.rieger@ag.tn.gov
lindsay.sisco@ag.tn.gov
matt.cloutier@ag.tn.gov
amber.seymour@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Notice has been served on the following counsel of record through the Electronic Filing System on this 23rd day of August, 2019:

Scott P. Tift
David W. Garrison
Barrett Johnston Martin & Garrison, LLC,
Bank of America Plaza,
414 Union Street, Suite 900
Nashville, TN 37219
stift@barrettjohnson.com
dgarrison@barrettjohnson.com

Thomas C. Jessee
Jessee & Jessee
P.O. Box 997
Johnson City, TN 37605
jjlaw@jesseeandjessee.com

Autumn Katz
Hailey Flynn
Michelle Moriarty
Marc Hearron
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
akatz@reprorights.org
hflynn@reprorights.org
mmoriarty@reprorights.org

Maithreyi Ratakonda
Melissa Cohen
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
mai.ratakonda@ppfa.org
Melissa.cohen@ppfa.org

Michael J. Dell
Jason M. Moff
Irene Weintraub
Timur Tusiray
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
mdell@kramerlevin.com
jmoff@kramerlevin.com
iweintraub@kramerlevin.com
ttusiray@kramerlevin.com

Thomas H. Castelli
American Civil Liberties Union
PO Box 120160
Nashville, TN 37212
tcastelli@aclu-tn.org

*s/ Matthew D. Cloutier*
MATTHEW D. CLOUTIER