# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ADAMS & BOYLE, P.C., on behalf of itself and its patients; *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>HERBERT H. SLATERY III, Attorney General of Tennessee, in his official capacity; *et al.*,<br><br>    Defendants. | CASE NO. 3:15-cv-00705<br><br>JUDGE FRIEDMAN<br><br>MAGISTRATE JUDGE FRENSLEY |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Leading medical authorities agree that abortion is "essential care" for which a delay of weeks or even days may increase risks or make abortion inaccessible. Pls. TRO Br. 17-18. The State repeatedly emphasizes that EO-25 reflects the recommendations of the American College of Surgeons ("ACOS"), *see* Defs.' TRO Resp. at 2, 7, but ignores that ACOS has classified "pregnancy termination (for medical indication or patient request)" as a procedure that "if significantly delayed could cause significant harm" (unlike surgeries that can be delayed for a few weeks or several months).[1] Likewise, the World Health Organization classifies "services related to reproductive health, including care during pregnancy and childbirth" as a "high priority category" of "essential services."[2] The State argues the Providers seek "different treatment," Defs.' TRO Resp. at 2, but, in reality, it is the State that singles out abortion as the only form of essential care not excepted under EO-25. The State describes EO-25 as a "temporary measure" limited to "two-week[s]." Defs. TRO Resp. 7, 19. But EO-25 went into effect on April 9, delaying care for a minimum of three weeks, and, by the State's own admission, the number of COVID-19 infections in Tennessee are rapidly advancing and have "not yet reached their peak." *See* Defs.' TRO Resp. 1, 4, 8.[3] The State's own facts belie its assertion that EO-25 will expire on April 30. The Providers share the State's goal of preserving PPE and preventing the spread of COVID-19 and emphasize that EO-25's application to abortion *frustrates*, rather than furthers, those goals.

---

[1] *See* Am. Coll. of Surgeons, *COVID-19 Guidelines for Triage of Gynecology Patients* (Mar. 24, 2020), https://www.facs.org/covid-19/clinical-guidance/elective-case/gynecology.

[2] *See* World Health Organization, *COVID-19: Operational guidance for maintaining health services during at outbreak*, at 4 (Mar. 25, 2020), *available at* https://www.who.int/publications-detail/covid-19-operational-guidance-for-maintaining-essential-health-services-during-an-outbreak.

[3] Indeed, on April 15, Governor Lee called on all schools to remain closed for the remainder of the academic year. *See* Laura Testino, *Gov. Bill Lee calls on all Tennessee public schools to remain closed for rest of academic year*, Tennessean (Apr. 15, 2020), https://www.tennessean.com/story/news/_education/2020/04/15/coronavirus-education-schools-to-close-rest-of-academic-year-gov-bill-lee/2938268001/.

### I. The Providers' Standing is Not in Question

Third-party standing exists where, as here, *the providers themselves are directly regulated* by the challenged law, and it threatens their patients with constitutional injury. *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 440 n.30 (1983), *overruled on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 62 (1976); *Doe v. Bolton*, 410 U.S. 179, 188 (1973). "Plaintiffs in this type of case have uniformly been permitted to assert the rights of the affected third parties," and no further inquiry is necessary. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987).

Even under the separate third-party standing inquiry for plaintiffs who are not directly regulated by a challenged law, binding precedent confirms that abortion providers have third-party standing on behalf of their patients, given the close relationship between providers and patients. *Singleton v. Wulff*, 428 U.S. 106, 117 (1976). The *Singleton* Court recognized that abortion providers are "uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, [the abortion] decision" where patients depend on "the aid of a physician" to exercise their rights. *Id.*; *see also Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972). Defendants attempt to conjure a conflict between the Providers and their patients around COVID-19, Defs.' TRO Resp. at 10-11, when the evidence documents the Providers' deep commitment and extensive efforts to ensure that they are providing the essential care their patients need while simultaneously "conserving needed medical resources and preventing the spread of the virus." *See* Proposed Suppl. Compl. ¶ 43; Pls. TRO Br. 11-13.[4] Finally, Defendants assert the Providers fail

---

[4] Perplexingly, Defendants cite to *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908 (6th Cir. 2019) (*en banc*) in asserting that Plaintiffs lack standing here. But as *Hodges* explains,

to show any "hindrance" preventing their patients from bringing suit, but the Providers describe in detail the challenges in their patients' lives, *see, e.g.*, Looney Decl. ¶¶ 19, 21; Terrell Decl. ¶¶ 13-16, 39-40; Rovetti Decl. ¶¶ 17-21, and it is undisputed that COVID-19 has exacerbated the obstacles patients would face in accessing the courthouse. *See* Defs. Resp. 6.

## II. *Jacobson* Does Not Alter the Outcome

*Jacobson*'s applicability here is called into doubt by the text of *Casey* itself, which cites to *Jacobson* when defining the limits of the state's power to restrict abortion. Pls.' TRO Br. 27 (citing *Casey*, 505 U.S. at 857 (explaining *Jacobson* does not supplant modern substantive constitutional test applied to the right at issue)). Even assuming *Jacobson* has any relevance in this context, Defendants acknowledge that *Jacobson* places two clear restraints on the government's police power: that it have a "real or substantial relation" to its asserted goals and that it "must always yield in case of conflict" with "any right which [the Constitution] gives or secures." *Jacobson v. Massachusetts*, 197 U.S. 11, 25, 31 (1905). EO-25 fails both tests. First, the State argues only that abortion requires minimal PPE but fails to address record evidence demonstrating that by preventing abortion, EO-25 *undermines* rather than furthers its interests. The State does not contest the Providers' testimony demonstrating that prenatal care for a continuing pregnancy, carrying to term, later abortion procedures, and forcing patients to travel out of state all require *more* PPE and person to person contact, creating greater risks of spreading COVID-19 and reducing essential PPE and hospital resources. Pls.' TRO Br. 14-16, 18-19.

Further, courts across the country agree that a violation of the right to abortion cannot stand under *Jacobson*. *See* Pls. TRO Br. 26-30 (citing, *inter alia*, *Robinson v. Marshall*, No. 2:19-cv-

---

"[t]he Supreme Court [has] held that abortion providers have standing to bring due process challenges on behalf of their patients." *Hodges*, 917 F.3d at 914.

3

365, 2020 WL 1847128, at *8-9, n.10 (M.D. Ala. Apr. 12, 2020)); *Little Rock Family Planning Servs. v. Rutledge*, No. 4:19-cv-00449-KGB, 2020 WL 1862830, at *6 (E.D. Ark. Apr. 14, 2020) (granting TRO of previability ban on abortion at 10 weeks)). The State does not contest that EO-25 places a previability ban on abortion after 11 weeks LMP, rendering it unconstitutional as applied to abortion under five decades of precedent. Pls. TRO Br. 21-23. It relies on *In re Abbott*, No. 20-50296, 2020 WL 1866010 (5th Cir. Apr. 13, 2020), but even there, the Fifth Circuit has not permitted state action that would entirely prevent patients from accessing abortion in the state, highlighting how extreme the State's argument is here. *See* Pls. TRO Br. 3, n.2. And, though the State acknowledges that it must demonstrate that EO-25's benefits must outweigh its burdens, Defs.' TRO Resp. at 14, it relies solely on case law—already briefed at length before this Court— in which far shorter waiting periods were upheld, ignoring that those cases were explicitly limited to their records and the Supreme Court's more recent holding that when applying the undue burden standard, courts must engage in a fact specific inquiry. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law ¶¶ 182-188 (ECF No. 226). But where, as here, the State severely burdens access to care without actually serving any state interest, it violates the undue burden standard. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016).

### III. Allowing EO-25 to Block Procedural Abortions Will Cause Irreparable Constitutional, Medical, and Other Harms, and Serves No Public Interest.

As district courts across the country have uniformly found, laws blocking procedural abortion care for, at minimum, several weeks or months cause patients irreparable harm and warrant emergency relief. Pls. TRO Br. 31-32; *Little Rock Family Planning Servs.*, 2020 WL 1862830 at *10. The State argues that the Providers have not identified a patient who will be unable to access services, but that is not the applicable legal standard, and the Providers have established EO-25's severe burdens. Pls. TRO Br. 13-19, 30. On the face of the restriction, 100% of patients

4

after 11 weeks LMP will be blocked from obtaining abortions for at least three weeks, potentially losing access to care entirely. Pls. TRO Br. 13-14. Moreover, the State ignores evidence that the Providers will face an extensive backlog after the expiration of the order. *Id*. The State does not, and cannot, rebut the Providers' extensive medical evidence that delaying abortion care by weeks jeopardizes patients' health, and that pregnant patients prevented from obtaining an abortion face profoundly greater risks of complications and death, as well as psychological and other harms. Pls. TRO Br. 14-19. The State also fails to rebut evidence demonstrating the imminent harms to patients who will likely lose their ability to obtain an abortion in Tennessee if they are delayed until after April 30, 2020, patients who will be forced to undergo a lengthier and more complex abortion procedure, and patients who will be forced to undergo two-day procedures. *See* Pls. TRO Br. 13-18.

For all these reasons, the Providers respectfully request that this Court grant their motion.

Dated: April 16, 2020

Respectfully submitted,

*/s/ Thomas H. Castelli*
Thomas H. Castelli (No. 24849)
American Civil Liberties Union
Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Tel: (615) 320-7142
tcastelli@aclu-tn.org

*Attorney for Plaintiffs*

Scott P. Tift
David W. Garrison
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900

5

Case 3:15-cv-00705   Document 243   Filed 04/16/20   Page 6 of 9 PageID #: 6132

Nashville, TN 37219
Tel: (615) 244-2202
Fax: (615) 252-3798
stift@barrettjohnson.com
dgarrison@barrettjohnson.com

Thomas C. Jessee
Jessee & Jessee
P.O. Box 997
Johnson City, TN 37605
Tel: (423) 928-7175
jjlaw@jesseeandjessee.com

Michael J. Dell*
Jason M. Moff*
Irene Weintraub*
Timur Tusiray*
Catherine Hoge*

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel: 212-715-9129
Tel: 212-715-9113
mdell@kramerlevin.com
jmoff@kramerlevin.com
iweintraub@kramerlevin.com
ttusiray@kramerlevin.com
choge@kramerlevin.com

*Attorneys for Plaintiffs Adams & Boyle, P.C., Memphis Center for Reproductive Health, and Planned Parenthood of Tennessee and North Mississippi*

Autumn Katz*
Genevieve Scott**
Michelle Moriarty*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Tel: (917) 637-3600
Fax: (917) 637-3666
akatz@reprorights.org
gscott@reprorights.org
mmoriarty@reprorights.org

6

*Attorneys for Plaintiffs Adams & Boyle, P.C. and Memphis Center for Reproductive Health*

Maithreyi Ratakonda*
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
Tel: (212) 261-4405
Fax: (212) 247-6811
mai.ratakonda@ppfa.org

*Attorney for Plaintiffs Planned Parenthood of Tennessee and North Mississippi and Dr. Kimberly Looney*

Julia Kaye**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
jkaye@aclu.org

*Attorney for Plaintiff Knoxville Center for Reproductive Health*

*Admitted *pro hac vice*
**Application for admission *pro hac vice* pending

7

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing *Reply in Support of Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction* has been served on the following counsel of record through the Electronic Filing System on this 16th day of April, 2020:

**Alexander Stuart Rieger**
**Steven Ashley Hart**
**Sue A. Sheldon**
**Lindsay Sisco**
**Matt Cloutier**
**Amber Seymour**
**Kathryn Baker**

Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207
(615) 741-2408
Fax: (615) 532-5683
alex.rieger@ag.tn.gov
steve.hart@ag.tn.gov
sue.sheldon@ag.tn.gov
lindsay.sisco@ag.tn.gov
matt.cloutier@ag.tn.gov
amber.seymour@ag.tn.gov
kathryn.baker@ag.tn.gov

                                                          */s/ Thomas H. Castelli*
                                                          Thomas H. Castelli